Nichols v. Boswell.

---

NICHOLS v. BOSWELL *et al., Appellants.*

DIVISION TWO.

1.   **Will, Construction of:** INTENTION OF TESTATOR.   The leading rule in the interpretation of a will is that the intention of the testator, as expressed in it, shall control.

2.   ———— : ————.   The intention of the testator must be gathered from all the parts of the instrument itself taken together.

3.   ———— : EVIDENCE OF SITUATION OF TESTATOR.   When, however, it becomes necessary to explain inconsistencies or doubtful expressions in the will, the situation of the testator, the objects of his bounty and all the surrounding circumstances may be considered.

4. ———: SUPPLYING WORDS.  Words even may be supplied in a will to effectuate the manifest intention of the testator.

*Appeal from Holt Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*Van Buskirk* and *Huston & Parrish* for appellants.

(1) The court erred in refusing the declarations of law offered by the appellant, and in rendering judgment for the respondent. The will must be construed so as to carry out the intention of the testator, as indicated by the words of the will, not from a single word or passage, but from a consideration of the whole instrument, giving to each part its fair and usual meaning. R. S. 1879, sec. 4008 ; *Lampart v. Haydel*, 96 Mo. 439 ; *Hall v. Stephens*, 65 Mo. 670 ; *Reinders v. Koppelman*, 94 Mo. 338 ; *Turner v. Timberlake*, 53 Mo. 371 ; *Allison v. Chaney*, 63 Mo. 279 ; *Russell v. Eubanks*, 84 Mo. 83. (2) In construing the will the second and third clause must be construed together. Amanda Hudson being dead at the time of the making of the will, the entire property, under the terms of the will, mentioned in the second and third clauses, upon the death of the testator, passed to Mrs. Boswell. *Corby v. Corby*, 85 Mo. 371 ; *Russell v. Eubanks*, 84 Mo. 83 ; *Shepard v. Shepard*, 17 Atl. Rep. 173 ; *Johnson v. Warren*, 42 N. W. Rep. 74 ; *Oderdonk v. Oderdonk*, 5 N. Y. S. 242 ; *Phillips v. Ferguson*, 8 S. E. Rep. 241 ; *Best v. Best*, 11 S. W. Rep. 600. (3) It is the presumption of the law that the testator, in making his will, intended to dispose of his entire property, and not to die intestate as to any part of it, and it is the duty of the court to so construe the will, unless the adoption of such construction will manifestly tend to defeat the intention of the testator in the disposition of his property, as shown by

words used in the will.  *Farish v. Cook*, 78 Mo. 212–20, and authorities there cited.  If the will ıs to be construed according to the usual and ordinary meaning of the words employed, then the testator did dispose of his entire estate.  "The primary duty of a court of construction in the interpretation of wills is to give tⱺ each word employed, if it can with propriety receive it, the natural, ordinary meaning which it has in the vocabulary of ordinary life, and not to give to words employed in that vocabulary an artificial, a secondary or technical meaning."  *Farish v. Cook*, 78 Mo. 218, and authorities there cited ; *Hall v. Stephens*, 65 Mo. 673.

*T. J. Dungan* and *W. W. Ramsay* for respondent.

(1)  The oral evidence offered to show the situation of the testator, his relation to the objects of his bounty, etc., was admissible.  *Smith v. Bell*, 6 Pet. 74 ; Schouler on Wills, secs. 467, 579, 580.  (2)  The intention of the testator when ascertained must control in the construction of this will.  The intention is the controlling guide.  *Turner v. Timberlake*, 53 Mo. 371 ; *Carr v. Dings*, 58 Mo. 400 ; *Reinders v. Koppelman*, 68 Mo. 490 ; *Foot v. Saunders*, 72 Mo. 616 ; *Russell v. Eubanks*, 84 Mo. 82.  The intention is not to be gathered from single words or single sentences, but from a consideration of the whole instrument and the general design and scope of it.  *Allison v. Chaney*, 63 Mo. 279 ; Schouler on Wills, secs. 468–473 ; *Taggart v. Murray*, 53 N. Y. 233.  To aid the intention of testators, courts have disregarded words, phrases and sentences.  The estate given to respondent in the second clause of the will in clear, plain and positive terms cannot be taken away by the doubtful expression of the third clause.  *Roseboom v. Roseboom*, 81 N. Y. 356 ; *Walker v. Parker*, 13 Pet. 166.

MACFARLANE, J.—Ejectment to recover the undi-
vided half of a tract of land situate in Holt county.
Both parties claim title under the will of Daniel Hudson,
which was as follows:

"In the name of God, Amen.   I, Daniel Hudson, of
the county of Holt, in the state of Missouri, do make
and publish this, my last will and testament:

"*First.*   I give and bequeath to Charles W. Hud-
son and Elvora Hudson, heirs of my eldest son, Charles
W. Hudson, to each of the above-named heirs of Charles
W. Hudson, I bequeath $1.

"*Second.*   I also further give and devise to my
granddaughter, Minerva Nichols, heir of my daughter,
Permelia Caroline Hudson, and to my daughter Mary,
wife of John Boswell, and also to my daughter Amanda
Jane, wife of David Hudson, all of my real estate,
together with all and every messuages, lands, tenements
and hereditaments, with the appurtenances whereof I am
seized in fee, situated, lying and being in Hickory
township, county of Holt, and state of Missouri, to be
divided equally between each of the above-named
Minerva Nichols, Mary Boswell and Amanda Jane Hud-
son, so that each may receive one equal portion, to have
and to hold, to them and their heirs forever.

"*Third:*   I further will that in case the above-named
Minerva Nichols and Amanda Hudson, or either of them,
should be dead and not now living, then all of my estate,
both real and personal, I give and devise and bequeath
to my daughter Mary, wife of John Boswell, to have
and to hold, to her and her heirs forever.

"*Fourth.*   I do appoint as executor of this, my will,
William Shields.   In witness whereof, I have hereunto
set my hand, this twenty-third day of September, A. D.
1881.                         ·        his
                        " DANIEL ⨯ HUDSON."
                                mark.

Nichols v. Boswell.

It was admitted by the parties to the suit on the trial as follows : " That at the date of the execution of the will, to-wit, September 23, 1881, Daniel Hudson, the testator, was in possession of and owned the land in fee described in the will and in plaintiff's petition ; that the plaintiff, Minerva Nichols, is the granddaughter of the deceased, and the daughter of Mrs. Caroline Perme-lia Nichols ( Hudson ), who was a daughter of the deceased ; that Amanda Hudson and Mary Boswell, named in the will, are the daughters of the deceased, and that Mary Boswell is the wife of John Boswell, the defendant ; that the two children mentioned in the first clause of the will are the grandchildren of deceased, and only children of Charles W. Hudson, who was also deceased at the time of the execution of the will; that the defendant was in possession of the land at and before the time mentioned in plaintiff's petition, and held the possession thereof, denying plaintiff's right thereto, or to any part thereof, ever since said time ; that he held and claimed adversely to plaintiff, by right of his wife, under the will read in evidence, and that, he is now in possession of the land ; that the plaintiff also claims said land under the will read in evidence, and that the said Amanda Hudson, mentioned in the will was dead at the time of the execution thereof,—that she died in April, 1880."

The following evidence was offered by plaintiff and admitted over defendant's objections :

John Boswell testified as follows : "I am the defendant and son-in-law of the testator, Daniel Hudson. I think Mr. Hudson, the testator, died in October, 1881, a couple of months after the execution of the will. The plaintiff and Amanda Hudson named in the will were not present when the will was made ; they were not in the neighborhood. I do not know where they were ; · had not seen them for. some years. Amanda Hudson married in Holt county and left, I think, in 1872 or 1873 for Texas. The plaintiff left here when she was a

little girl, and has been living, as I understood, with her grandfather, in LaFayette county, or some of the lower counties in Missouri. The testator was at my house when he died and when the will was made. I suppose my wife was present, or in the house at the time the will was made. Charles Webster Hudson was a son of Daniel Hudson and the father of the two children named in the will. The testator had given Charles Webster Hudson, before his death, eighty acres of land adjoining the land in controversy."

The plaintiff introduced evidence tending to show that the rents and profits of plaintiff's interest in the land in suit were $83.33 1-3 per year, and that the monthly rents and profits of said land are $6.90 per month.

Plaintiff received judgment for an undivided one-third of the land and defendant appealed.

The rights of the parties depend upon the construction given to the foregoing will of Daniel Hudson, deceased. Defendant contends that, inasmuch as Amanda Hudson, one of the devisees of the land in controversy, given in the second clause of the will, was dead at the time of its execution, she took the whole estate therein by virtue of the third clause. There can be no doubt that there is an apparent inconsistency, if not repugnancy, between the third and the first and second clauses of this instrument. The first clause, in plain terms, gives to each of his grandchildren, Charles and Elvora Hudson, $1. The second clause gives to his granddaughter, Permelia Nichols, who is plaintiff in this suit, his daughter, Mary Boswell, who is wife of defendant, and a daughter, Amanda Hudson, all his real estate, "so that each may receive an equal portion, to have and to hold to them and their heirs forever;" this devise of the real estate is absolute and unequivocal in its terms. The third clause provides "that, in case the above-named Minerva Nichols and Amanda Hudson, or either of them, should be dead, and not now living, then all my estate,

Nichols v. Boswell.

both real and personal, I give, devise and bequeath to my daughter Mary, wife of John Boswell, to have and to hold to her and her heirs forever."

At the date of the execution of the will, Amanda Hudson was not living. Would a proper construction of the will defeat all the provisions of the first and second clauses by reason of existence of the contingency, apparently provided against in the third clause?

"The first and great rule in the exposition of wills to which all other rules must bend is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." *Smith v. Bell*, 6 Peters, 75. So important and paramount is this rule regarded in this state, that the legislature has given it emphasis by making it a part of the statute law. R. S. 1879, sec. 4008. It is not to be understood that parol evidence can be resorted to, to ascertain the intention of the testator ; to do so would defeat the requirement, that all wills shall be in writing. The intention must be gathered from the will itself, not from particular words, phrases or clauses, but from the whole instrument, and every part thereof, taken as a whole. *Allison v. Chaney*, 63 Mo. 280.

When it becomes necessary to explain inconsistencies, or ambiguous or doubtful expressions, the situation of the testator and objects of his bounty, and all the circumstances surrounding the parties may be considered. *Smith v. Bell, supra.*

The testator had four children, Charles W., Permelia, Mary and Amanda. At the time of making the will Charles W. was dead. To him, during his lifetime, the testator had given eighty acres of land, and by the first clause of the will his children were given $1 each. The testator still owned two hundred acres of land, which he disposed of, under the second clause of the will, by dividing it equally among his two daughters, Mary and Amanda, and plaintiff, who was a daughter of Permelia. There is no uncertainty about these

bequests. They are unequivocal and absolute, without condition or qualification. The division of the property and the provisions for the proper and natural objects of his bounty, thus made, were just and equitable, such as might have been expected from a parent, who wished to show no partiality or preference among his children, or their descendants. The intention, the controlling purpose of the testator, as indicated from the provisions of the second clause, seems to have been to make an equal division of this land among his two daughters, and his granddaughter, without preference to any one of them ; to use his own language, "so that each may receive an equal portion."

When he comes to make the third clause, had his intention changed, and did he intend thereby, that, if his daughter Amanda was not living, his grandchild, who was first named, who was apparently first in his thoughts and affections, should be disinherited ? There was no such connection between plaintiff and Amanda, as could raise even a suspicion that their interests should stand or fall together. One had been in Texas for years, the other in LaFayette county in this state.

" Where one estate is given in one part of an instrument in clear and decisive terms, such estate cannot be taken away, or cut down, by raising a doubt upon the extent, or meaning, or application of a subsequent clause, or by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving that estate." *Roseboom v. Roseboom*, 81 N. Y. 359. While the provisions contained in the third clause, taken alone, are without such ambiguity or uncertainty as would render their meaning doubtful, they fail to express the intention and purpose of the testator with the clearness and decision shown in the preceding clause. If a construction can be given that will reconcile the conflicting clauses, it should be done in such a manner as to give effect to the

whole instrument and make the positive and decisive provisions for plaintiff effective. Two of the objects of his bounty, his daughter Amanda and plaintiff, had been absent a number of years when the will was made. It was not known by the testator whether they were, at that time, still living. If one or both of them were not living, the estate devised to such one would lapse, and remain undisposed of under the will. It is evident, taking the whole will and construing all its parts as one instrument, the intention of the testator in making the third clause was to prevent the lapsing of the estate, or any part of it, in case one or both were dead; and when he undertakes, in this clause, to give all his estate, real and personal, to his daughter Mary, he did not intend to include property which he had effectually disposed of in the preceding clause, but such estate only as he may have attempted to dispose of, and which attempt might prove ineffectual by reason of the death of the devisee.

He may, also, have intended to pass to Mary other property, undisposed of. That the intention was not to defeat previous bequests, or dispose of property already devised, becomes more apparent, when we remember that the legacy of $1 each, given to the two grandchildren, in the first clause, was evidently done with a view of complying with section 3969, Revised Statutes, 1879, and thus preventing intestacy as to them. If the intention was to give his daughter all his estate, regardless of previous disposition of any part of it, then it would take from these two grandchildren the provision intended to prevent them from demanding an interest in the whole estate. This he could never have intended, but such would be the result under the interpretation contended for. It may be true that intestacy as to these children may have been avoided by the mere naming them, but the testator's intention evidently was to avoid such intestacy, by making the provisions

contained in the first clause.  Again, to his daughter Mary he had already given one-third of this land. What purpose could have been accomplished by again giving her the same ?

The conclusion is, that the testator intended that his daughter Mary should take, under the third clause of the will, the estate previously devised, respectively to plaintiff and his daughter Amanda, only in case the devisee of such estate should be dead at the time the will was executed, and not otherwise ; and that he never intended, if one of said devisees should be dead, that his daughter Mary should take the estate of both, and also the legacy of the other grandchildren.

If this was the evident intention of the testator, as apparent from the whole will, then in order to effectuate that intention, the words, "undisposed of," may be supplied, so as to make the third clause of the instrument read, "then all my estate, both real and personal, *undisposed of*, I give, devise and bequeath to my daughter Mary."  This supplying of words to effectuate the manifest intention is allowable under the well-known rule, "that in the construction of a will the intention of the testator, apparent in the will itself, must govern, and that in order to effectuate that intention, as collected from the context, words may, when necessary, be supplied, transposed or changed."  *Dew v. Barnes*, 1 Jones' Eq. 151; *Kellogg v. Mix*, 37 Conn. 243; *Butterfield v. Hamvant*, 105 Mass. 338; 2 Williams on Ex'rs, sec. 978.  "And it is no objection to supplying the omission, that different persons may differ in regard to which of two or more words, of similar significance, will more appropriately supply the omissions." 1 Jarman, 456.  See also *Aulick v. Wallace*, 75 Ky. 533, in which a number of other authorities are collated.

The proof, from the whole will and from the condition of the parties, their relation to each other, and the character of the property, is manifest and convincing,

that these or similar words were inadvertently omitted from the will.

The evidence introduced for the purpose of showing the situation of the parties was proper, and there was no error in admitting it. In the construction of ambiguous or conflicting provisions, "the situation of the parties may very properly be taken into view." *Smith v. Bell, supra;* Schouler on Wills, secs. 579, 580.

Judgment affirmed. All of this division concur.